IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Frank Carr,                                          :
                        Plaintiff              :        Civil Action 2:12-cv-00276

            v.                                        :        Judge Sargus

Carolyn Colvin,                                 :        Magistrate Judge Abel
Commissioner of Social Security,
                        Defendant            :

**REPORT AND RECOMMENDATION**

Plaintiff Frank Carr brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits and Supplemental Security Income benefits.  This matter is before the  Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.** Frank Carr maintain he became disabled at age 45 by back pain. He was injured at work when he was struck in the head by a 60-pound pipe. He lost his job as a factory worker due to absences related to his injury. He worked at McDonalds for eight to nine months before he lost his job because he could no longer stand due to pain in his knees and legs.

The administrative law judge found that Carr retained the ability to perform a reduced range of work having light exertional demands. Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge committed substantial error in relying on an inaccurate hypothetical question to the vocational expert in reaching his decision that Carr is not disabled; and,

- The administrative law judge erred when he found plaintiff's allegations concerning his pain and limitations not credible.

**Procedural History.**  Plaintiff Frank Carr filed his application for disability insurance benefits on April 27, 2006, alleging that he became disabled on February 15, 2005, at age 45, by arthritis in his back and neck and sinus and allergy problems.  (R. 63.) The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On April 2, 2010, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (R. 377.)  A vocational expert and a medical advisor also testified.  On June 9, 2010, the administrative law judge issued a decision finding that Carr was not disabled within the meaning of the Act.  (R. 24.)  On February 22, 2012, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (R. 1-3.)

**Age, Education, and Work Experience.**  Carr was born August 18, 1959.   (R. 69.) He completed the 10th grade.  (R. 67.)  He has worked as a cook and a factory worker. He last worked February 15, 2005.  (R. 63-64.)

**Plaintiff's Testimony.** Carr testified that he completed the tenth grade in regular classes. He served in the Army National Guard for five years. He received an honorable discharge. In 2004 and 2005, he worked part-time at McDonalds for eight or nine

2

months. He stopped working at McDonalds because he had difficulty standing for so long. His knees and legs started hurting him badly. His back gave him a lot of problems. He was not permitted to sit down or lean on anything.

The longest job he held was at B&C Industries as a factory worker where he lifted rims for cars and trucks. He also worked at a mall doing housekeeping.

While at work, he was hit in the head with a 60-pound pipe. He returned to work a week later. He started having very bad headaches and back pain. He was fired from his job for missing too many days. He started experiencing more problems with his left leg similar to what he had been having with his right leg. He experiences numbness in his left hip.

Carr had renal disease. He testified that his kidneys hurt, although sometimes he cannot tell if the pain is from his kidneys or his back. Because of issues with his kidneys, Carr is unable to take certain pain medications.

Carr testified that he had a little problem picking up a gallon of milk. He tried to do as much as he could because he has custody of his 10-year old daughter. He was using a cane because he had blacked out a few days earlier and fell down some steps. He stopped driving because he was having black outs. He rated his typical pain as a 4 or 5 on a 10-point scale. He had headaches 3-4 times per month. The headaches last a week or more. Sometimes his headaches are so bad that he cannot eat or sleep.

Carr testified that he could walk for almost a block. He walks his daughter school which is a block and a half away and then walks back home. His sister helps him care

for his daughter in addition to his friend that he is staying with. He has difficulty

sitting. He elevates his legs to relieve his pain. He uses heat and ice on his legs and also

performs stretching exercises.

His medications upset his stomach. He had difficulty falling and staying asleep

because of pain in his legs.

His friend does the cooking and housekeeping, although he tries to help. Carr

washed dishes. He could not vacuum because of the pain. He folded clothes. He had

good days and bad days. On good days, he could go outside and walk around a little

bit. He had three or four good days a month. On bad days, his legs hurt so much that he

moans and groans and cannot do anything. It hurt so much that he could not eat. (R.

381-401.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets

out the relevant medical evidence of record.  This Report and Recommendation will,

nonetheless, summarize that evidence in some detail.

<u>Summa Health System</u>. On July 2, 2004, plaintiff presented at the emergency

department with complaints of chronic low back pain after being injured by a pipe. He

reported that NSAIDS and muscle relaxants were not providing him with relief. His

pain increased with movement and improved with rest. The pain radiated into his right

leg. On physical examination, plaintiff had pain on palpation over his lower lumbar

back. Cranial nerves II-XII were intact. Strength in all extremities was 5/5. DTRs were

+2.  (R. 121.)

On May 1, 2006, plaintiff presented at the emergency department with complaints of back pain and numbness in his legs. On physical examination, plaintiff had mild tenderness to palpation along the paraspinal muscles. There was no vertebral point tenderness or bony stepoff. He was neurovascularly intact to the bilateral lower extremities. DTRs were +2, equal and symmetric. Plaintiff received injections of Norflex and Toradol. (R. 107.)

On June 14, 2006, plaintiff presented at the emergency department with complaints of back pain radiating down into the right lower extremity. He described his pain as burning and sharp that radiated into his right leg. Movement aggravated the pain, and nothing relieved his pain. His primary care physician prescribed Ultram, a muscle relaxant and NSAIDs, which did not fully control his symptoms. He had concerns about using narcotics because of his history of hepatitis C. On physical examination, plaintiff was in mild to moderate distress. He had tenderness to palpation on the lower lumbar. Range of motion was intact, except with flexion, which was markedly reduced. Deep tendon reflexes were minimally decreased on the right patella. (R. 141.)

A May 7, 2007 CT of plaintiff's lumbar spine revealed significant facet arthritis and disc disease at the L5-S1 level with narrowing of the interior aspect of the neural exit foramina. (R. 150.) A June 29, 2007 MRI of the lumbar spine revealed degenerative changes of the lumbar spine, most apparent at the L5/S1 level. There was some mild bulging of the disc, although part of this was due to uncovering of the disc secondary to

5

slight listhesis. Thee was moderate facet and ligament hypertrophy. There was no significant canal narrowing. There was mild bilateral neural foraminal narrowing. (R. 151.)

A June 29, 2007 of plaintiff's hips showed that the extrapelvic musculature was symmetric and normal in appearance. There was loss of T2 signal within the L5-S1 intravertebral disc, consistent with degenerative disc disease. (R. 152.)

<u>Steven A. Severyn M.D</u>. On June 25, 2007, Dr. Severyn, a physician with the Ohio State University Spine Center, diagnosed right hip pain, lumbar disc displacement without myelopathy, and possible right-sided radiculitis. Plaintiff reported a work-related injury in which he was struck in the head by a 60-pound pipe. He lost consciousness. As a result of the accident, plaintiff suffered from pain in his right hip and in the lumbar region of his lower back.

On physical examination, his straight leg raising findings were negative. He had intact and symmetric reflexes at the knees and ankles. He had 80 degrees forward flexion and 20 degrees posterior extension with intact and normal ranges of motion for lateral rotation and lateral bending. There was tenderness of the lumbar spinous processes, but there was no paraspinal spasm. Motor strength and sensory findings were normal throughout. Examination of the hip finds a slight limitation of external rotation in the right hip with some reproduction of his pain. (R. 177-78.)

On July 13, 2007, Dr. Severyn noted the possibility that plaintiff could be suffering from impingement syndrome in his right hip, as indicated by the by the

6

presence of the small joint effusion. Based on diagnostic imaging, Dr. Severyn believed that plaintiff's right-sided pain was more likely a manifestation of radiculitis associated with the claimant's moderately severe L5-S1 spondylolisthesis. Dr. Severyn believed that the overall causes of plaintiff's lumbar and radicular pain were ligamentous stress and strain and degenerative changes at the L5-S1 level. He noted that the S1 antherolisthesis accounted for the stenotic behavior of the S1 nerve, which was likely causing the claimant's radicular discomfort as well. He believed that the L5 distribution pain the claimant was experiencing was more indicative of radiculitis than nerve root ischemia. As a result, Dr. Severyn recommended that plaintiff undergo a series of lumbar epidural injections. (R. 161-62.)

On November 7, 2008, Dr. Severyn noted that plaintiff underwent a series of three epidural injections, but his improvement only lasted slightly less than a month. On physical examination, plaintiff had flexion of 60 degrees and posterior extension of 10 degrees with palpation. He had tenderness in the paravertebral muscle regions. Twisting in the lower lumbar region reproduced his back pain but not the radicular complaint. (R. 318-19.)

Kimberly Austin, M.D. In a September 12, 2007 letter, Dr. Austin, plaintiff's primary care physician, noted that plaintiff was treated for hypertension, hepatitis C, and GERD. Dr. Austin stated that plaintiff's hypertension was uncontrolled, and he experienced lightheadedness and dizziness due to his elevated blood pressure. (R. 189.)

On January 9, 2009, plaintiff's blood pressure was 164/112. On February 2, 2009, Dr. Austin noted that plaintiff's blood pressure had improved from the previous visit. He had no episodes of dizziness, although when he experienced a lot of pain he felt lightheaded when he stood up. (T. 226-27.) On June 23, 2009, plaintiff's blood pressure was 120/86. He was diagnosed with hypertension, benign (essential). (R. 216-17.) On August 24, 2009, Dr. Austin stated plaintiff's blood pressure was doing well, although she noted it was low and it might be the cause of his lightheadedness and dizziness. (R. 290-92.)

Willa Caldwell, M.D. On January 3, 2008, Dr. Caldwell, a state agency reviewing physician, completed a physical residual functional capacity assessment (doc. 199). Dr. Caldwell opined that plaintiff could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds. Plaintiff could stand and/or walk for about 6 hours in an 8-hour day. He could sit for about 6 hours in an 8-hour day. He was unlimited in an ability to push and/or pull.  Carr could never climb ladders, ropes, or scaffolds. Dr. Caldwell concluded that plaintiff's allegations were partially credible, but he appeared capable of exertion set forth in her residual functional capacity. (R. 199-206.)

Ohio State University Health System records include an April 21, 2008 of MRI of plaintiff's lumbar spine that revealed mild antherolisthesis of L5 on S1 associated with stable moderate degenerative changes. No gross movement was observed with flexion or extension. MRI imaging revealed stable, mild antherolisthesis, stable moderate disc

8

degeneration at the L5-S1 level, stable broad based posterior disc

protrusion/uncovering of disc material posteriorily at the L5-S1 level with significant

bilateral facet hypertropic changes resulting in moderate narrowing of the neural

foramina bilaterally, without significant spinal stenosis. There was slight, stable bulging

of the posterior margin of the discs at the L4-L5 and L3-L4 levels without significant

spinal stenosis or neural foraminal narrowing.  In addition, there was mild bilateral

facet hypertrophy at the L4-L5 level. The overall impression was no significant interval

change since the June 29, 2007 examination. (R. 338-39.)

An April 29, 2008 vascular study of plaintiff's lower extremities revealed normal

pressures and waveform at rest. Right and left great toe-brachial indexes were normal

at rest. Plaintiff had normal arterial perfusion in both lower extremities with no

evidence of hemodynamically significant lower extremity arterial disease either at rest

or with exercise. (R. 336-37.)

A July 28, 2008 EMG study revealed normal sensory conduction in the right sural

nerve and motor conductions in the right peroneal nerve. Needle electrode testing was

normal. (R. 375-76.)

In 2009, plaintiff underwent two medial branch blocks, which provided him with

40-50% improvement in his pain. In March and October 2009, plaintiff underwent

bilateral radio-frequency ablations of the L3-L4, L4-L5 and L5-S1 medial branch nerves.

(R. 237-39, 244-46.)

On September 9, 2009, plaintiff received an injection for left hip greater trochanteric bursitis. (R. 298-99.)

Jaymes Granata, M.D. On January 5, 2010, Dr. Granata performed a disability examination for the Bureau of Disability Determination (R. 270-83.) Carr reported that he initially injured his back in 2002. Since the injury, plaintiff's back has become progressively worse. He complained of a constant dull, achy pain. He experienced intermittent pain with movement and radiation to both legs down into his heels. He rated these sharp exacerbations in pain as a ten on a ten-point scale. During these episodes, plaintiff could not move without significant pain throughout the back and lower legs. He received some relief from heat pads and nonsteroidal anti-inflammatories. Lifting weights greater than 40 pounds and bending increased his pain. He had received multiple injections, but they provided him little relief. Physical therapy did not help him at all.

On physical examination, plaintiff had a normal gait. He was able to perform a heel to toe walk, heel walk, and toe walk without difficulty. He did not have any swelling, erythema, atrophy or deformities. Plaintiff had mild tenderness to palpation in his lower back, both midline and paraspinal. Carr was able to stand from a chair, get on and off the table, grasp, write, perform fine motor activities, and reach overhead without difficulties. He had full active and passive range of motion with 5/5 strength of upper and lower extremities bilaterally. There were no focal sensory deficits. He had 2/4 reflexes in patellar, Achilles and triceps.

Dr. Granata diagnosed chronic low back pain. Dr. Granata opined that plaintiff was able to perform all job-related activities related to sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling. Plaintiff appeared limited in lifting heavy weights and bending repetitively. Plaintiff reported that lifting more than 30 pounds gave him significant back pain. (R. 270-72.)

Dr. Granata completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) form. Dr. Granata opined that plaintiff could continuously lift or carry up to 20 pounds, frequently lift up to 50 pounds and occasionally lift up to 100 pounds. Plaintiff could sit, stand, or walk for 4 hours in an day. Plaintiff could frequently climb stairs, ramps, ladders, or scaffolds. He could occasionally balance, stoop, kneel, crouch, or crawl. He could tolerate occasional exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold, extreme heat, or vibrations. (R. 273- 78.)

**Testimony of Medical Expert.** Paul F. Gatens, M.D., a Board-certified specialist in physical medicine and rehabilitation, testified at the hearing. Dr. Gatens testified that Carr had normal arterial effusion to both lower extremities and that there was no evidence of hemodynamically significant lower extremity arterial disease. (R. 402-03.) Dr. Gatens concluded that plaintiff did not meet or equal the Listings for 4.12, 1.02A or 1.04. (R. 403-04.)

11

Dr. Gatens opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently. His biggest limitation was with respect to standing and walking. Plaintiff could only stand and/or walk for 4 to 5 hours in an 8-hour shift if he could change positions every 45 minutes. Carr could sit for 6 hours in an 8-hour shift if he could change positions every 90 minutes. Dr. Gatens further opined that plaintiff should avoid ropes, ladders, scaffolds and dangerous equipment. He could occasional crouch, kneel or crawl. (R. 404.)

**Administrative Law Judge's Findings.**

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2007.

2.  The claimant has not engaged in substantial gainful activity since February 15, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  Based on the objective medical evidence, the claimant has the following severe impairments best described as: lower back degenerative disc disease at the L3-4 and L4-5 levels, spondylolisthesis at the L5-S1 level, chronic low back pain, status post bilateral hip bursitis, vascular lower extremity radiculitis, headaches and past history of hepatitis (inactive currently) C (20 CFR 404.1520(c) and 416.920(c)).

4.  Based on the objective medical evidence, the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift and/or

12

carry ten pounds frequently and twenty pounds occasionally. He can [sit] for ninety minutes at a time for a total of six to eight hours in an eight hour workday, provided he be allowed to change positions, and stand and/or walk for forty-five minutes at a time for a total of four to five hours in an eight-hour workday. He cannot climb ropes, scaffolds or ladders but can kneel, stoop, crouch and crawl occasionally. He is precluded from working around hazardous or moving machinery.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 18, 1959 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 15, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 13-23.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings

of the Commissioner as to any fact, if supported by substantial evidence, shall be

13

conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id.*  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge committed substantial error in relying on an inaccurate hypothetical question to the vocational expert in reaching his decision that Carr is not disabled.  Plaintiff argues that the administrative law judge's hypothetical question to the vocational expert did not contain all of his limitations, and, as a result, the testimony of the vocational expert does not constitute substantial evidence supporting the administrative law judge's findings. Plaintiff maintains that the consultative examiner concluded that

14

Carr is limited to sitting, standing, and walking for 4 hours in an 8-hour workday, occasional balancing, and occasional exposure to environmental conditions such as unprotected heights, extreme temperatures, pulmonary irritants, and vibrations. Although the administrative law judge determined that the findings of the consultative examiner were supported by the medical evidence overall, these limitations were not in the hypothetical question posed to the vocational expert. The administrative law judge's residual functional capacity assessment failed to include limitations on bending and twisting due to Carr's decreased lumbar spine range of motion. Carr also experiences significant headaches. He has hypertension and his chronic pain causes episodes of lightheadedness and black outs.

- The administrative law judge erred when he found plaintiff's allegations concerning his pain and limitations not credible. Plaintiff argues that the administrative law judge based his credibility determination largely on the basis that there were not atrophy findings. Plaintiff maintains that the administrative law judge overlooked records tending to show that Carr experiences significant pain. The administrative law judge failed to acknowledge findings of reduced joint motion and muscle spasm. Carr's range of motion was described as markedly reduced, and the consultative examiner found that his dorsolumbar spine range of motion was reduced by 50 percent for extension, flexion and bilateral lateral flexion. Carr's treating physicians

15

consistently believed Carr's allegations of severe pain. Plaintiff further argues that the administrative law judge is not a medical expert and cannot discount and reject medical findings and conclusions of physicians.

**Analysis.**

Accuracy of Hypothetical Given Vocational Expert: Legal Standard.  Plaintiff argues that the Administrative Law Judge's hypothetical to the vocational expert was not supported by substantial evidence because the consultative examiner concluded that Carr is limited to sitting, standing, and walking for 4 hours in an 8-hour workday, occasional balancing, and occasional exposure to environmental conditions such as unprotected heights, extreme temperatures, pulmonary  irritants, and vibrations.

In determining whether a claimant is disabled, an administrative law judge makes a residual functional capacity determination.  That finding is an "assessment of the claimant's remaining capacity for work" once his or her limitations have been taken into account.  20 C.F.R. § 416.945.  It is "a more complete assessment of her physical and mental state and should include an 'accurate[ ] portray[al] [of her] individual physical and mental impairment[s].'  *Varley,* 820 F.2d at 779;  *Myers v. Weinberger,* 514 F.2d 293, 294 (6th Cir.1975) (per curiam)."  *Howard v. Commissioner of Social Security,* 276 F.3d 235, 239 (6th Cir. 2002).

When a  vocational expert testifies, the administrative law judge asks the expert to assume certain facts about the claimant's work abilities.  The facts in this hypothetical are the administrative law judge's residual functional capacity findings.  The

16

administrative law judge must accurately state each limitation that affects the claimant's ability to work.  If there is not substantial evidence supporting the limitations the administrative law judge includes in the hypothetical to the  vocational expert, then the expert's testimony is not substantial evidence supporting the Commissioner's decision denying benefits.  *Howard,* 276 F.3d at 240-42.  If a limitation that substantially affects the claimant's ability to work is established by uncontroverted medical evidence, it is error for the administrative law judge to omit this limitation from the hypothetical given the administrative law judge.  276 F.3d at 242.

Accuracy of Hypothetical Given Vocational Expert: Discussion.  The administrative law judge concluded that plaintiff retained the residual functional capacity to lift and/or carry 10 pounds frequently and 20 pounds occasionally; he could sit for up to 90 minutes at a time and stand and/or walk for 45 minutes for up to a total of four to five hours. The residual functional capacity is supported by substantial evidence. The administrative law judge relied on the testimony of the medical expert. The administrative law judge rejected the opinion of Dr. Granata, the examining physician, to the extent is was inconsistent with the opinion of Dr. Gatens. Dr. Granata's opinion, however, concluded that plaintiff retained greater abilities than that of the residual functional capacity formulated by the administrative law judge. The administrative law judge properly rejected the opinion of the reviewing physician who concluded that plaintiff was capable of medium exertion because evidence received after this assessment demonstrated that plaintiff had greater limitations. The

17

administrative law judge rejected the hypothetical questions posed by plaintiff's counsel on the basis that the added limitations were without rational basis in the record. The administrative law judge did not err by relying on Dr. Gatens' testimony. Dr. Gatens is a Board-certified physical medicine and rehabilitation specialist. Dr. Gatens had access to the entire record, and his opinion was well-supported and consistent with the evidence.

Plaintiff also argues that the administrative law judge overlooked the limitations imposed by his hypertension, which was caused by his chronic pain. Carr maintains that he experienced dizziness and lightheadedness as a result of hypertension. Plaintiff maintains that the administrative law judge erred when he failed to recognize hypertension as one of Carr's severe impairments. Plaintiff has not demonstrated how his hypertension further limited his residual functional capacity. Carr alleges that he experienced lightheadedness and dizziness, and the administrative law judge formulated a residual functional capacity that precluding work that involved climbing ropes, scaffolds or ladders and working around hazardous or moving machinery.

Credibility Determination. Pain is an elusive phenomena.  Ultimately, no one can say with absolute certainty whether another person's subjectively disabling pain and other symptoms preclude all substantial gainful employment.  The Social Security Act requires that the claimant establish that he is disabled.  Under the Act, a "disability" is defined as "inability to engage in any substantial gainful activity *by reason of any medically determinable or mental impairment* which can be expected . . . to last for a

18

continuous period of not less than 12 months. . . ." 42 U.S.C. §423(d)(1)(A) (emphasis added).

Under the provisions of 42 U.S.C. §423(d)(5)(A), subjective symptoms alone cannot prove disability. There must be objective medical evidence of an impairment that could reasonably be expected to produce disabling  pain or other symptoms :

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.  Objective medical evidence of pain or other symptoms established by medically acceptable clinical or other laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

The Commissioner's regulations provide a framework for evaluating a claimant's symptoms consistent with the commands of the statute:

> (a) *General*.  In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  By objective medical evidence, we mean medical signs and laboratory findings as defined in §404.1528(b) and (c).  By other evidence, we mean the kinds of evidence described in §§404.1512(b)(2) through (6) and

404.1513(b)(1), (4), and (5) and (e). These include statements or reports from you, your treating or examining physician or psychologist, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. We will consider all of your statements about your symptoms, such as pain, and any description you, your physician, your psychologist, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work. However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you. (Section 404.1527 explains how we consider opinions of your treating source and other medical opinions on the existence and severity of your symptoms, such as pain.) We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.

20 C.F.R. §404.1529(a). A claimant's symptoms will not be found to affect his ability to

work unless there is a medically determinable impairment that could reasonably be

expected to produce them. 20 C.F.R. § 404.1529(b). If so, the Commissioner then

evaluates the intensity and persistence of the claimant's pain and other symptoms and

determines the extent to which they limit his ability to work. 20 C.F.R. § 404.1529(c). In

making the determination, the Commissioner considers

> all of the available evidence, including your history, the signs and
> laboratory findings, and statements from you, your treating or nontreating
> source, or other persons about how your symptoms affect you. We also
> consider the medical opinions of your treating source and other medical
> opinions . . . .

*Id.*

In this evaluation of a claimant's symptoms, the Commissioner considers both

objective medical evidence and "any other information you may submit about your

symptoms." 20 C.F.R. § 404.1529(c)(2). The regulation further provides:

> Because symptoms, such as pain, are subjective and difficult to quantify,
> any symptom-related functional limitations and restrictions which you,
> your treating or nontreating source, or other persons report, which can
> reasonably be accepted as consistent with the objective medical evidence
> and other evidence, will be taken into account as explained in paragraph
> (c)(4) of this section in reaching a conclusion as to whether you are
> disabled. We will consider all of the evidence presented, including
> information about your prior work record, your statements about your
> symptoms, evidence submitted by your treating or nontreating source,
> and observations by our employees and other persons. Section 404.1527
> explains in detail how we consider and weigh treating source and other
> medical opinions about the nature and severity of your impairment(s) and
> any related symptoms, such as pain. Factors relevant to your symptoms,
> such as pain, which we will consider include:
>
>> (I) Your daily activities;
>>
>> (ii) The location, duration, frequency, and intensity of your pain or
>> other symptoms;
>>
>> (iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). When determining the extent to which a claimant's symptoms limit his ability to work, the Commissioner considers whether the claimant's statements about the symptoms is supported by or inconsistent with other evidence of record:

In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4).

SSR 96-7p explains the two-step process established by the Commissioner's regulations for evaluating a claimant's symptoms and their effects:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms. . . .

> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

> When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. § 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

> 1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

<u>Case law interpreting the statute and regulations</u>. At the outset, it is important to keep in mind that symptoms are the claimant's "description of [his/her] physical or mental impairment." 20 C.F.R. § 404.1528(a). Inevitably, evaluating symptoms involves making credibility determinations about the reliability of the claimant's self-report of his symptoms. *Smith ex rel E.S.D. v. Barnhart*, 157 Fed.Appx. 57, 62 (10th Cir. December. 5, 2005) (not published)("Credibility determinations concern statements about symptoms.")

"Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain." *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247 (2007); SSR 96-7p, 1996 WL 374186 (July 2, 1996). That test was first set out in *Duncan v. Secretary of Health and Human*

24

*Services*, 801 F.2d 847, 853 (6th Cir. 1986). First, the Court must determine "whether there is objective medical evidence of an underlying medical condition."  If so, the Court must then

> examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan*, 801 F.2d at 853.  Any "credibility determinations with respect to subjective complaints of pain rest with the ALJ."  *Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers,* 486 F.3d at 247 (citing  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir.1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir.1981)).  The ALJ is required to explain her credibility determination in her decision, which "'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *See id*. (quoting SSR 96-7p).  Furthermore, the ALJ's decision must be supported by substantial evidence.  *Rogers,* 486 F.3d at 249.

Discussion of ALJ's credibility determination. The administrative law judge concluded that the record did not contain sufficient objective medical evidence to substantiate the severity of pain and degree of functional limitations alleged by plaintiff. The administrative law judge noted the lack of objective findings in his physical examinations. Despite the presence of subjective findings, such as limited

range of motion due to pain or pain palpation, no focal motor deficits were documented. The administrative law judge indicated that he would have expected plaintiff to seek medical treatment with greater regularity if his pain was as severe and disabling as alleged. The administrative also determined that the medical evidence showed that Carr's medications had been relatively effective in controlling his symptoms. Additionally, Carr's treating physician never referred plaintiff to an orthopedic surgeon. The administrative law judge properly considered plaintiff's daily activities. He concluded that his activities were not consistent the level and persistence of symptoms alleged. Plaintiff assisted with cooking, cleaning, washing dishes and walking his daughter to school. (R. 392 and 398.) In October 2007, plaintiff's treating physician noted that he was employable and that his impairment did not interfere with his activities of daily living. (R. 373.) On September 2009, he reported that Carr was employable and that his impairments only slightly interfered with his activities of daily living. (R. 301.) The administrative law judge also indicated that plaintiff showed no evidence of pain or discomfort at the hearing. As a result, the administrative law judge's credibility assessment is supported by substantial evidence in the record.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.**  It is **FURTHER RECOMMENDED** that plaintiff's motion for

26

summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

s/Mark R.  Abel
United States Magistrate Judge